CROWELL LAW
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **SEPTEMBER PRODUCTIONS, INC., and CRIMINAL PRODUCTIONS, INC.,** <br><br> Plaintiffs, <br><br> v. <br><br> **MIKE DAMYAN,** <br><br> Defendant, | Case No.: 3:16-cv-01746-SB <br><br> FIRST AMENDED COMPLAINT <br><br> COPYRIGHT INFRINGEMENT <br><br> SUBJECT TO STANDING ORDER No. 2016-8 <br><br> DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiffs September Productions, Inc. ("September"), and Criminal Productions, Inc.("CPI"), complain and allege as follows:

NATURE OF THE ACTION

1.  This is a civil action for copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). Plaintiffs seek injunctive relief, statutory damages, attorney fees and costs, and such other relief as the Court deems proper.

2.     This action is subject to and governed by Standing Order 2016-8, the Case Management Order governing peer-to-peer copyright enforcement actions in this District.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant resides in this district.

## PARTIES

### September

5.     Plaintiff September is a Nevada corporation with principal offices in Los Angeles, California and an affiliate of Nu Image / Millennium Films, production companies and distributors of a notable catalog of major motion pictures.

6.     *Septembers of Shiraz* is a major motion picture released in theatres in 2015.

7.     The motion picture *Septembers of Shiraz* is a thriller based on the New York Times bestseller and true story of a Jewish family caught in the Islamic revolution in Iran.

8.     *Septembers of Shiraz* is protected by the Copyright Act and registrations including Pau 3-740-540 and the pending registration filed January 20, 2016.  Exhibit 1.

9.     Under The Copyright Act, September is the proprietor of copyrights and related interest needed to bring suit.

10.    The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

11.    The motion picture is currently offered for sale in commerce and is available through Amazon and Netflix.

12. Defendant had notice of September's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture and copies, each of which bore a proper copyright notice. Exhibit 2.

13. September comes to court seeking relief as the motion picture *Septembers of Shiraz,* is being pirated and trafficked in the BitTorrent network and is being illegally downloaded and distributed countless times worldwide with many confirmed instances of infringing activity traced to Oregon.

## CPI

14. Plaintiff CPI is a Nevada corporation with principal offices in Los Angeles, California and an affiliate of Nu Image / Millennium Films, production companies and distributors of a notable catalog of major motion pictures.

15. *Criminal* is a major motion picture released in theatres in April 2016.

16. The motion picture *Criminal* is action thriller about what happens when the memories, secrets and skills of a dead CIA operative are implanted into the mind of an unpredictable dangerous prison inmate in hopes that he will be able to complete the operative's mission.

17. *Criminal* is protected by the Copyright Act and properly registered, Reg. No. PA 1-984-029, April 15, 2016.  Exhibit 2.

18. Under The Copyright Act, CPI is the proprietor of copyrights and related interest needed to bring suit.

19. The motion picture *Criminal* contains wholly original material that is copyrightable subject matter under the laws of the United States.

20. The motion picture is currently offered for sale in commerce being currently a major motion picture release in theatres.

21.     Defendant had notice of CPI's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture and copies, each of which bore a proper copyright notice.

22.     CPI comes to court seeking relief as the motion picture *Criminal*, while still in theatres, was pirated and trafficked in the BitTorrent network and is being illegally downloaded and distributed countless times worldwide with many confirmed instances of infringing activity traced to Oregon.

## THE DEFENDANT

23.     The defendant originally identified as Doe-73.240.174.9 is now known to be Mike Damyan, of Gresham, Oregon who was observed through internet protocol address ("IPA") 73.240.174.9 by plaintiffs' investigator, Maverickeye, as distributing plaintiffs' motion pictures.

24.     The defendant has been observed and confirmed as distributing plaintiffs' motion pictures and other copyrighted content hundreds of times over a period of months.

25.     The defendant is a user of the 'Netflix for pirates' bittorrent application Popcorn Time, which is designed for and promoted for the express use of facilitating the theft of movies such as plaintiffs' motion pictures.

26.     The defendant obtained, installed and operated his bittorrent client application for the sole and express purpose of infringing the rights of Plaintiffs and others.

27.     On or about September 8, 2016 the defendant received actual notice of this action, including the caption of the complaint and copies of Standing Orders Nos. 2016-7 and 2016-8, yet continued to actively traffic in copyrighted content including the selection and download of new infringing conduct after such notice.

PEER-TO-PEER INTERNET PIRACY IN GENERAL

*Operation*

28.     Bittorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense and share huge amounts of data in digital format, including motion pictures.

29.     The bittorrent protocol enables computers to exchange large files (such as motion pictures) without creating a heavy workload for any individual source/computer. It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion pictures) available for copying by other users; (2) search for files stored on other computers; and (3) transfer exact copies of files from one computer to another over the Internet.

30.     The use of bittorrent requires multiple intentional acts. A user must load specific software, use the software to join the network, search for a file, and then select the file they wish to download. As each user or peer joins the network and requests a copy of a file, they form a type of social contract to not only download the file, but to be a part of the network to allow the file to be downloaded by others. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded the file, and then in turn makes that content available to others.

31.     Since the bittorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download because this will maximize his or her download speed and access to additional content.

32.     Defendant in this action has been observed as making Plaintiffs' motion pictures available to others in furtherance of the bittorrent network of piracy.

*The Business of Piracy*

33. Internet piracy and in particular bittorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

34. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

35. Defendant's participation in the bittorrent exchange of Plaintiffs' motion pictures is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

36. Many parties, and possibly Defendant, have been compensated for their participation in expanding the availability of pirated content to others through bittorrent networks, including Plaintiffs' motion pictures, even if only through being granted greater access to other pirated content.

37. The use of bittorrent does more than cause harm through the simple theft of intellectual property. The bittorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

38. Based on activity observed associated with the defendant's IP address, the defendant is a prolific proponent of the bittorrent distribution system advancing the bittorrent economy of piracy.

*Harm to Plaintiff and Others*

39. Digital piracy, including bittorrent piracy costs the entertainment industry over $80 billion per year.

40. Nationwide the film and television industry supports over 1.9 million workers and contributes over $19.3 billion in taxes.

41. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

42. In Oregon the film and television industry provides over 6,800 direct jobs and 2,800 production related jobs paying $269 million in wages.

43. In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
>
> …

> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
> Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas intellectual property, including trademarks, [are] essential …; and
> …
> Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
> …

44. The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture.  Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the rights of others and the law.

45. As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

## CAUSE OF ACTION

(Federal Copyright Infringement)

46. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs.

47. Defendant, without the permission or consent of Plaintiffs, copied and distributed Plaintiffs' motion pictures through a public bittorrent network.

48. Defendant's actions infringed Plaintiffs' exclusive rights under The Copyright Act.

49.     The conduct of the defendant has been with express and specific notice, willful, intentional, in disregard of and indifferent to Plaintiff's rights with the intent to cause Plaintiffs harm and deprive Plaintiffs of royalties and the benefit of Plaintiffs' copyrights.

50.     As a direct and proximate result of Defendant's conduct, Plaintiffs' exclusive rights under 17 U.S.C. § 106 have been violated.

51.     Plaintiffs are entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

52.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury.

53.     Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendant from further contributing to the infringement of Plaintiffs' copyrights, the economy of piracy, and ordering that Defendant destroy all copies of the motion picture made in violation of Plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

   A.   For a finding Defendant willfully and intentionally infringed Plaintiffs' rights;

   B.   For entry of permanent injunction enjoining Defendant from direct, indirect or contributory infringement of Plaintiffs' rights, except pursuant to a lawful license or with the express authority of Plaintiffs.  And further directing Defendant to destroy all unauthorized copies of Plaintiffs' motion pictures;

C. For entry of permanent injunction enjoining Defendant from supporting the bittorrent economy of piracy by enjoining Defendant from direct, indirect or contributory infringing file sharing in violation of U.S. copyright law.

D. Statutory damages pursuant to 17 U.S.C. § 504.

E. For Plaintiffs' reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

F. For such other and further relief as the Court deems proper.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

DATED: November 7, 2016.

Respectfully submitted,

CROWELL LAW

*/s/ Carl D. Crowell*
Carl D. Crowell, OSB No. 982049
carl@crowell-law.com
503-581-1240
Of attorneys for Plaintiffs